**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 1:22-cr-00710 |
| | ) | |
| Plaintiff, | ) | Judge J. Philip Calabrese |
| | ) | |
| v. | ) | Magistrate Judge Amanda M. Knapp |
| | ) | |
| RALPH CRENSHAW, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**OPINION AND ORDER**

A cooperating individual told law enforcement that he kept a pill press at the house of his uncle, Defendant Ralph Crenshaw.  A few months later, officers conducted a trash pull from Mr. Crenshaw's house and found a small plastic baggie containing a grey-colored powder, which they believed but had not confirmed was fentanyl.  Based on this information, the officers secured a federal warrant to search Mr. Crenshaw's home for evidence of drug trafficking.  Although the officers did not find what they were looking for, the search did yield several guns and ammunition.  Because he had a prior felony conviction, the United States charged Mr. Crenshaw for possessing the firearms and ammunition.

Arguing that probable cause did not support the warrant, Defendant seeks to suppress the evidence seized in the search of his home.  This record presents the thinnest veneer of probable cause that walks a narrow tightrope between reasonable suspicion and probable cause.  For this reason, as a prudential matter, the warrant in this case should not have issued, and the undersigned would *not* have signed it.

But a court does not review the issuance of a warrant on a clean slate as if deciding whether to authorize a search in the first instance.  Under the deferential standard of review for challenges to warrants, the Court cannot say that the Magistrate Judge lacked a substantial basis for his determination of probable cause, if barely.  Accordingly, for these reasons and those more fully explained below, the Court **DENIES** the motion to suppress.

## STATEMENT OF THE CASE

On July 29, 2022, the Magistrate Judge signed a warrant authorizing a search of Mr. Crenshaw's home.  (ECF No. 21-1, PageID #205.)  Law enforcement conducted a search days later and found four guns and ammunition.  (ECF No. 1, PageID #1.)  The record includes no information detailing the search, such as where within the home the officers discovered the weapons or ammunition.  On December 15, 2022, a grand jury indicted Defendant for possessing the firearms and ammunition as a felon.  (*Id.*)  The United States arrested and arraigned Defendant on January 10, 2023.  (Minutes, Jan. 10, 2023.)

Defendant's motion to suppress challenges the information supporting the search warrant as it applies to Mr. Crenshaw's home.  "The review of the sufficiency of the evidence supporting probable cause is limited to the information presented in the four corners of the affidavit."  *United States v. Berry*, 565 F.3d 332, 338 (6th Cir. 2009).  Accordingly, the Court limits its review to the affidavit supporting issuance of the warrant.  Because the information and investigation at issue concern suspected illegal activities of several members of the Crenshaw family, this ruling refers to

2

Defendant Ralph Crenshaw as "Defendant" or "Mr. Crenshaw" and refers to other members of the family by their full names.  On August 2, 2023, the Court heard oral argument on Defendant's motion to suppress and took the matter under advisement. (Minutes, Aug. 2, 2023.)

## FINDINGS OF FACT

Mr. Crenshaw is 66 years old and has lived with his wife on Fifth Avenue in East Cleveland, Ohio for over a decade.  According to the indictment, Mr. Crenshaw was previously convicted of domestic violence threats in municipal court in 1999. (ECF No. 1, ¶ 1, PageID #1.)  Based on the unredacted information presented to the Magistrate Judge in the affidavit supporting the warrant, the Court makes the following findings of relevant facts.

### A.      The Affidavit Supporting the Warrant

A police officer assigned to the Drug Enforcement Administration as a Task Force Officer swore out the affidavit.  (ECF No. 24-1, ¶ 2, PageID #209.)  At that time, he had been a police officer for about five years and a member of the task force for about 18 months.  (*Id.*)

### A.1.    The Drug Trafficking Organization

In February 2022, law enforcement intercepted a suspicious package in transit from Las Vegas to Cleveland.  (*Id.*, ¶ 16, PageID #216–17.)  That package contained more than two kilograms of a vacuum-sealed substance resembling crystal meth. (*Id.*, PageID #217.)  Agents identified Jutius Crenshaw as a resident at the address to which the package was addressed (which is not on Fifth Avenue) and suspected that he was the intended recipient of the package.  (*Id.*)  They determined that

multiple orders of Firmapress (a powder used to make pills when mixed with active ingredients) and other materials used to press pills were made from a phone number that tracked the package's delivery status. (*Id.*, ¶ 17, PageID #217.) Further, information connected some of those orders to Walter Crenshaw and an individual with a history of drug trafficking. (*Id.*, ¶¶ 17–18, PageID #217 & #218.)

That package was one of several sent to various addresses in Cleveland (none identified as being on Fifth Avenue) from the same location in Las Vegas. (*Id.*, ¶ 21, PageID #221.) In April 2022, law enforcement obtained a warrant to intercept and search a separate parcel that turned out to contain more than 2.5 pounds of vacuum-sealed tablets resembling oxycodone but suspected to contain fentanyl. (*Id.*, ¶ 25, PageID #222–23.) Among others, Ronald Crenshaw tracked the shipment of that parcel. (*Id.*, ¶ 27, PageID #223; *cf. id.*, ¶ 26, PageID #223.) So did Devin Crenshaw. (*Id.*, ¶ 27, PageID #223; *cf. id.*, ¶ 28, PageID #225.)

In May 2022, law enforcement identified another suspicious parcel sent from Las Vegas to Cleveland. (*Id.*, ¶ 29, PageID #225–26.) Law enforcement surveilled the delivery of that parcel to a home (not on Fifth Avenue) that Devin Crenshaw entered shortly thereafter. (*Id.*, ¶¶ 33 &35, PageID #227.) Four minutes later, Devin Crenshaw exited the home carrying a white bucket. (*Id.*, ¶ 36.) He sat in his car (in which tinted windows shielded his activity) for roughly 30 minutes and then departed. (*Id.*, ¶ 37, PageID #228.) During that time, officers were unable to observe his activity through the car's tinted windows. Officers followed him to a residence in Cleveland (not on or near Fifth Avenue in East Cleveland). (*Id.*)

These events did not directly implicate or raise suspicion about Mr. Crenshaw or his house on Fifth Avenue.

### A.2.    Additional Information in the Warrant

Two additional general facts about the affidavit supporting the warrant merit a brief mention.  First, several paragraphs, but Paragraphs 19 and 20 in particular, describe alarming facts that would cause any reasonable judicial officer to issue a warrant.  But none of those facts implicates Mr. Crenshaw.  Second, the affidavit contains four charts showing the connections between various individuals and evidence in the investigation.  (*Id.*, PageID #219, #225, #230 & #236.)   None implicates Mr. Crenshaw or his house on Fifth Avenue in East Cleveland.

### B.    Grounds for the Search

The following facts in the affidavit provide the basis for issuance of the warrant.

In March 2022, an unnamed cooperating individual spoke with investigators about his role in pressing pills.  (*Id.*, ¶¶ 65–66, PageID #238.)  The individual, who was cooperating "for judicial consideration on his pending federal criminal case," advised that he kept "a small pill press at his uncle's residence" and noted the approximate location of that residence—providing the name of the street (Fifth Avenue) but not the specific address of the house.  (*Id.*)  Later, investigators identified Mr. Crenshaw as the relative to whom the cooperating individual referred.  (*Id.*, ¶ 68, PageID #239.)  This individual did not say that Mr. Crenshaw used or even knew of the pill press or was involved in the drug trade.  But he did confirm that the drug

trafficking organization being investigated used the pill press that he kept at his uncle's house to manufacture methamphetamine pills.  (*Id.*, ¶ 19(e), PageID #220.)

On July 25, 2022, law enforcement collected and examined the trash left at the curb outside Mr. Crenshaw's house.  (*Id.*, ¶¶ 92–94, PageID #243.)  Among the items recovered were "a small plastic baggie containing grey colored powder believed to be fentanyl," "a small red pill in a tear drop shape," and mail addressed to Mr. Crenshaw.  (*Id.*, ¶ 94, PageID #243–44.)  At the time the affidavit in support of the warrant was prepared, officers were awaiting the results of testing on the contents of the plastic bag.  (*Id.*, ¶ 94, PageID #244.)

Based on the investigation, the task force officer attested to his belief that Mr. Crenshaw used his house on Fifth Avenue as a stash house where he keeps and sells narcotics.  (*Id.*, ¶ 101, PageID #251.)  He further attested to a belief that Mr. Crenshaw stored a pill press in his residence that was used "to manufacture clandestine methamphetamine pills disguised as MDMA [ecstasy]."  (*Id.*, ¶ 101, PageID #251.)

### C.    Other Facts Relating to Mr. Crenshaw

Beyond those facts, the United States points to additional information in the affidavit in support of a showing of probable.  But the Court finds that this additional information, individually and taken together with the other information relating to Mr. Crenshaw in the affidavit, amounts to no more than suspicion.

### C.1.   Incident with Devin Crenshaw

On June 14, 2022, officers surveilled a house on East 90th Street in Cleveland.  (*Id.*, ¶ 69, PageID #239.)  They saw Devin Crenshaw get up from the front porch to

6

meet the driver of a black SUV in front of the house, reach his hand from his pocket to inside the vehicle, and then return to the residence.  (*Id.*, ¶ 70.)  Mr. Crenshaw was the registered owner of the black SUV, and the surveilling officers identified him as the driver and suspected this exchange involved drugs.  (*Id.*, ¶¶ 70 & 71.)

This incident provides suspicion that Devin Crenshaw, perhaps, dealt with Defendant in activities related to drug trafficking.  But it is hardly definitive and fails to account for myriad innocent explanations of what transpired, particularly since the two men are relatives.  Moreover, it provides *no* connection to the house on Fifth Avenue in East Cleveland.

### C.2.   Surveillance at the Bank

On one occasion in July 2022, officers tailed Mr. Crenshaw as he drove that same black SUV on errands.  (*Id.*, ¶¶ 72 & 75–89, PageID #240–43.)  They observed Mr. Crenshaw pick up and drive an older man to the bank.  (*Id.*, ¶¶ 80 & 81, PageID #241.)  While the older man was inside the bank, another man got in Mr. Crenshaw's car for a short time, there was "movement in the car" between the two men, then the man left with money in hand.  (*Id.*, ¶¶ 82 & 83, PageID #241–42.)  When the older man came out of the bank and got into the car, Mr. Crenshaw drove away and eventually dropped off the older man.  (*Id.*, ¶¶ 84 & 87, PageID #242.)  Mr. Crenshaw returned to his home on Fifth Avenue.  (*Id.*, ¶ 88, PageID 243.)

At best, this incident might raise suspicion.  But it might instead involve wholly innocent conduct.  No information in the affidavit supports an inference that the individual in the car with Mr. Crenshaw had any tie to the drug trafficking organization or to illegal conduct of any kind.  Again, nothing about this conduct,

even if suspicious, provides any connection to the house on Fifth Avenue other than the fact that Mr. Crenshaw lives there.

*     *     *

At bottom, the record shows and the Court finds that the probable cause determination turns on two facts.  First, investigators had information from a cooperating individual, whom they believed was reliable, that he kept a pill press at the home of his uncle Ralph Crenshaw on Fifth Avenue in East Cleveland and that the drug trafficking organization of which that cooperating individual was a part used that pill press to manufacture methamphetamine pills.  Second, the trash pull turned up suspected fentanyl and one small red pill shaped like a tear drop.

**GOVERNING LEGAL STANDARD**

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" and provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  U.S. Const. amend IV.  "'At the very core' of the Fourth Amendment 'stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion.'"  *Kyllo v. United States*, 533 U.S. 27, 31 (2001) (quoting *Silverman v. United States*, 365 U.S. 505, 511 (1961)).  "[T]he 'physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.'"  *Payton v. New York*, 445 U.S. 573, 585 (1980) (quoting *United States v. U.S. Dist. Court for E. Dist. of Mich.*, 407 U.S. 297, 313 (1972)).

8

"To establish probable cause adequate to justify issuance of a search warrant, the governmental entity or agent seeking the warrant must submit to the magistrate an affidavit that establishes 'a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Brooks*, 594 F.3d 488, 492 (6th Cir. 2010) (quoting *United States v. Berry*, 565 F.3d 332, 338 (6th Cir. 2009)). Probable cause is "not a high bar." *Kaley v. United States*, 571 U.S. 320, 338 (2014). It means "reasonable grounds for belief, supported by less than prima facie proof, but more than mere suspicion." *United States v. Lattner*, 385 F.3d 947, 951 (6th Cir. 2004) (cleaned up); *see also United States v. Padro*, 52 F.3d 120, 122–23 (6th Cir. 1995) (citing *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990)). Ultimately, the determination of probable cause involves a practical, commonsense review of the totality of the available facts and circumstances. *Padro*, 52 F.3d at 123 (citations omitted).

## STANDARD OF REVIEW

Ordinarily, a court affords a magistrate judge's determination of probable cause "great deference." *United States v. Asker*, 676 F. App'x 447, 456 (6th Cir. 2017) (quoting *United States v. Leon*, 468 U.S. 897, 914 (1984)); *see also United States v. Abernathy*, 843 F.3d 243, 250 (6th Cir. 2016) ((quoting *United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000) (en banc)). A reviewing court does not scrutinize the issuance of a warrant after the fact under a *de novo* standard, which would be inconsistent with the Fourth Amendment's strong preference for searches conducted pursuant to warrants. *Illinois v. Gates*, 462 U.S. 213, 236 (1983) (quotation omitted).

9

The issuing judge must make "a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* at 238.  When reviewing that determination, the Court simply ensures that the magistrate judge had a substantial basis for concluding that probable cause supported the warrant.  *Id.* at 238–39; *see also United States v. Alfano*, 838 F.2d 158, 162 (6th Cir. 1988) (quoting *United States v. Lambert*, 771 F.2d 83, 93 (6th Cir. 1985)).

"Review of the sufficiency of the evidence supporting probable cause is limited to the information presented in the four corners of the affidavit."  *United States v. Jackson*, 470 F.3d 299, 306 (6th Cir. 2006) (citing *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005)).  In addition to the facts in the affidavit, a reviewing court also considers reasonable inferences from those facts.  *United States v. McCoy*, 905 F.3d 409, 416 (6th Cir. 2018).  In determining whether probable cause supports issuance of a warrant, a court reviews the significance of each piece of evidence on which the affidavit relies, then the totality of facts and circumstances.  *United States v. Christian*, 893 F.3d 846, 854 (6th Cir. 2018).  But a court does not engage in line-by-line scrutiny of the affidavit.  *United States v. Walling*, 747 F. App'x 382, 385 (6th Cir. 2018) (quoting *United States v. Allen*, 211 F.3d 970, 972–73 (6th Cir. 2000) (en banc)).  In conducting its analysis, a court focuses on the factual assertions in the affidavit supporting the warrant, not its conclusory statements from the affiant.  *Christian*, 893 F.3d at 859 (citing *United States v. Williams*, 544 F.3d 683, 687 (6th

10

Cir. 2008)). The responsibility for determining whether probable cause supports a warrant rests with the issuing judge, not the officer seeking the warrant. *McCoy*, 905 F.3d at 416 (citing *Leon*, 468 U.S. at 919–22).

## CONCLUSIONS OF LAW

Defendant argues that the search of his home violated the Fourth Amendment because the warrant does not establish probable cause as to him or his home. (ECF No. 21.) Accordingly, he seeks to suppress the evidence resulting from that search. (*Id.*) Indeed, the exclusionary rule requires suppression of evidence seized from a search that violates the Fourth Amendment. *Weeks v. United States*, 232 U.S. 383, 394 (1914). That "judge-made remedy," however, "does not extend . . . to all Fourth Amendment violations." *United States v. Robinson*, 63 F.4th 530, 534 (6th Cir. 2023) (citing *Hudson v. Michigan*, 547 U.S. 586, 591–92 (2006)). For example, where officers rely in good faith on a warrant to conduct a search, exclusion of evidence is not the appropriate remedy even if a court later determines that probable cause was absent. *Leon¸* 468 U.S. at 913.

For its part, the United States argues that the affidavit supporting the warrant established a fair probability that evidence of drug trafficking would be found at Mr. Crenshaw's home. (ECF No. 25.) In any event, the United States maintains that officers relied on the warrant here in good faith. (*Id.*)

## I. Probable Cause

Probable cause to support a warrant is not readily susceptible to bright-line rules. It "is a 'practical, nontechnical conception'" based on the totality of the circumstances. *Gates*, 462 U.S. at 231 (quoting *Brinegar v. United States*, 338 U.S.

160, 176 (1949)).  Probable cause must persist from "the time the judge issues the warrant" through "the time officers execute it."  *United States v. Sheckles*, 996 F.3d 330, 339 (6th Cir. 2021) (citation omitted).

The results of a search do not factor into the evaluation of whether probable cause supported the issuance of a warrant.  *See United States v. Smith*, 510 F.3d 641, 648 (6th Cir. 2007).  The magistrate judge issuing a warrant does not enjoy the same benefit of hindsight as a judge reviewing the search after the fact.  Therefore, the Court gives no consideration to the results of the search of Mr. Crenshaw's residence.

Here, any determination of probable cause depends on the information provided to the authorities by the cooperating individual.  Within the four corners of the affidavit, much of the information he provided proved reliable, and it contains other circumstantial guarantees of trustworthiness—namely, he faced additional legal jeopardy if he provided false information.  But his information fails to tie Mr. Crenshaw to drug activity.  Moreover, it fails to connect him to the drug trafficking organization of others bearing the same last name.  Indeed, it details only one brief exchange in June 2022 between Mr. Crenshaw and Devin Crenshaw, which officers suspected was some sort of drug deal.  That incident is suspicious.  But it fails to provide probable cause for a search of Mr. Crenshaw's house weeks later and miles away.  Further, surveillance of the drug trafficking organization failed to identify *any* drug activity tied to Mr. Crenshaw or his house.

In the end, with respect to Mr. Crenshaw, the information from the cooperating individual puts a pill press in Defendant's on Fifth Avenue in East Cleveland in

March 2022.  After that date, only one other fact suggests that authorities might find evidence of drug activity in Mr. Crenshaw's house.  In July 2022, the trash pull found a small plastic bag containing suspected fentanyl powder and a red pill.

Nonetheless, the affidavit concludes that Mr. Crenshaw lives in a "stash house . . . where he keeps and sells his narcotics."  (ECF No. 21-1, ¶ 101, PageID #204.) After months of surveillance, *no* information in the affidavit supports that conclusion. This sort of "mere suspicion" cannot support probable cause.  *See, e.g.*, *United States v. Lattner*, 385 F.3d 947, 951 (6th Cir. 2004).  Additionally, the affidavit contains serious and alarming information about the drug trafficking organization that would cause any reasonable judicial officer to issue a warrant.  Including this information without tying Mr. Crenshaw to the trafficking organization raises serious concern that the warrant issued based on information insufficiently related to Mr. Crenshaw and without a proper showing of probable cause.  For two reasons, the Court cannot so conclude.

*First*, the affidavit ends with the statement that Defendant "stores a pill press" at his house that is used "to manufacture clandestine methamphetamine pills."  (ECF No. 21-1, ¶ 101, PageID #204.)  A cooperating individual who provided other information that proved reliable said that he kept a pill press in Mr. Crenshaw's house.  That information finds a modicum of additional support, weak though it might be, from the trash pull.  Notwithstanding the assertions about Mr. Crenshaw in the affidavit based on nothing more than suspicion, these facts and circumstances supply probable cause to believe not that Mr. Crenshaw operates a stash house or is involved

13

in the drug trafficking organization that bears his name, but that a search would locate contraband at Mr. Crenshaw's house on Fifth Avenue.

*Second*, the standard of review compels deference to the Magistrate Judge's determination of probable cause. Even though the affidavit contains a great deal of extraneous information and facts amounting to nothing more than suspicion of Mr. Crenshaw, the Court assumes as it must that the Magistrate Judge disregarded this information. Such is the case as well with the alarming information in Paragraphs 19 and 20 of the affidavit, which do not implicate Mr. Crenshaw. The cooperating individual's tip in conjunction with the contents of the trash pull provided a basis for the Magistrate Judge to find a fair probability that Mr. Crenshaw's home contained a pill press or other drug paraphernalia. But the deferential standard of review demands a *substantial* basis for a showing of probable cause. These facts in the affidavit clear the low bar under the standard of review—but just barely.

Given a governmental intrusion into the home, the core evil against which the Fourth Amendment guards, one might prefer to see a stronger showing of probable cause or a more tailored affidavit that removes the extraneous information to provide some assurance that investigators did not obtain a warrant by using alarming but irrelevant information, for example. Such concerns go to the issuance of the warrant in the first instance, not the determination of probable cause itself. In the end, the standard of review compels the Court's conclusion on Defendant's motion. After all, the Court has had the luxury of time to parse the record carefully, which goes beyond

the practical determination of the facts and circumstances the issuing Magistrate Judge had to make in a more constrained moment.

## II.  Counter Arguments

Because of the closeness of the issue, Defendant's arguments in favor of suppression merit close attention.

### II.A.  Nexus Requirement

Probable cause requires a nexus (a tie or connection) between the facts providing probable cause and the place to be searched.  In a search for drugs, the affidavit must show a fair probability that contraband "will be found in a particular place."  *United States v. Church*, 823 F.3d 351, 355 (6th Cir. 2016) (quoting *Gates*, 462 U.S. at 238).  This requirement means that the things to be seized must connect to the place to be searched.  *United States v. Reed*, 993 F.3d 441, 447 (6th Cir. 2021).  Facts in an affidavit that connect drugs to a residence in a "vague, generalized, and insubstantial" manner do not "establish probable cause."  *United States v. Carpenter*, 360 F.3d 591, 595 (6th Cir. 2004) (en banc).

"[C]ourts generally may not find a nexus to search a [known] drug dealer's home when 'the affidavit fails to include facts that directly connect the residence with the suspected drug dealing activity.'"  *Id*. at 448 (quoting *United States v. Brown*, 828 F.3d 375, 384 (6th Cir. 2016)); *but see id*. (collecting cases with "categorical statements pointing in opposite directions").  Proof of "other evidence" that "links drug dealing to the dealer's home" will establish the nexus.  *Id*.  "[A] defendant's status as a drug dealer, standing alone, does not give rise to a fair probability that drugs will be found in defendant's home."  *Berry*, 565 F.3d at 339.

15

The affidavit does not adequately support its conclusion that Mr. Crenshaw uses his home to stash and sell narcotics as part of a drug trafficking organization. For all the detail in the first half of the affidavit, no facts tie any of its activities to Mr. Crenshaw's house:  no foot traffic, no car traffic, no packages from Las Vegas or elsewhere, no phone calls.  Indeed, the first half of the affidavit simply has nothing to do with Mr. Crenshaw.  (*Compare* ECF No. 1-1, ¶¶ 15–64, PageID #169–191, *with id.*, ¶¶ 65–94, PageID #191–97.)  At best, the affidavit provides a fair probability that Mr. Crenshaw's house stores someone else's pill press, which someone uses in connection with the activities of a drug trafficking organization, and some reason to believe there might be fentanyl in the house too (if the contents of the baggie found in the trash pull proved to be fentanyl).  But that information hardly provides probable cause that Mr. Crenshaw uses his home "as [a] stash house of narcotics where he keeps and sells his narcotics."  (ECF No. 21-1, ¶ 101, PageID #204.)

This sort of logical leap or overbreadth, however, does not necessarily invalidate a warrant.  In *Church*, the defendant challenged a search based on the mismatch between the evidence sought and basis for probable cause:  "the police were looking for evidence of drug distribution" but "had probable cause to search only for evidence of simple drug possession."  823 F.3d at 355.  The Sixth Circuit rejected the argument that this distinction undermines a showing of probable cause.  Even if the affidavit supported only possession, "[w]hat mattered was that there was a 'fair probability' that [contraband] was in the house."  *Id*.  Distinctions between

"possess[ing] marijuana, deal[ing] marijuana, or commit[ing] some other crime" were immaterial. *Id.*

Similarly, in *Abernathy*, 843 F.3d at 251, an affidavit offered evidence of drug possession but not trafficking, yet the warrant authorized a search for evidence of the latter. Again, the Sixth Circuit rejected a challenge to the warrant on this basis: "as long the Affidavit showed a fair probability that marijuana would be found in Defendant's home, the Warrant . . . was not overbroad." *Id.* Ultimately, the court suppressed the evidence, but it did so because the affidavit did not support even possession—not because of the warrant's overbreadth.

Here, the affidavit fails to support the conclusion that Mr. Crenshaw operates or lives in a stash house. Nor does the surveillance of Mr. Crenshaw in June and July 2022 provide any nexus between unlawful activity and Mr. Crenshaw's home on Fifth Avenue. However, it does contain information supporting a fair probability that the house "stores a pill press." (ECF No. 1-1, ¶ 101, PageID #204.) Accordingly, "the police ha[d] a right to seize [it], pursuant to a search warrant, wherever [it was] likely to be present." *Church¸* 823 F.3d at 355; *see also Abernathy*, 843 F.3d at 251.

Defendant relies on *United States v. Brown*, 828 F.3d 375, 384 (6th Cir. 2016), which held that the drug-related activity documented in the affidavit supporting the search warrant there lacked the "necessary nexus" to the house to be searched. In *Brown*, the Sixth Circuit explained that an affidavit must include reliable "facts that directly connect the residence with the suspected drug dealing activity" to support an "infer[ence] that drugs will be found in the defendant's home." *Id.* But the

17

cooperating individual's statement about storing a pill press in Mr. Crenshaw's house provides reliable information connecting the house with contraband stored there.

### II.B.  Cooperating Individual's Tip

"When an affidavit relies on hearsay information from a confidential informant, the judicial officer (and reviewing court) must consider the veracity, reliability, and basis of knowledge for that information" to assess probable cause. *United States v. Thomas*, 605 F.3d 300, 307 (6th Cir. 2010).  If "the issuing judge can conclude independently that the informant is reliable, an affidavit based on the informant's tip will support a finding of probable cause."  *Id.* at 307–08 (citation omitted).

An individual, unidentified in the warrant affidavit but known to law enforcement, cooperated with police in exchange for leniency in a criminal case.  (ECF No. 21-1, ¶ 65, PageID #191.)  The individual told investigators that he keeps a pill press at Mr. Crenshaw's residence.  (*Id.*, ¶ 66.)  Though unnamed, the cooperating individual "was known to the police and" he "would be subject to prosecution for making a false report."  *United States v. May*, 399 F.3d 817, 824–25 (6th Cir. 2005).  These circumstances entitle the information he provided "to far greater weight than th[at] of an anonymous source."  *Id.*

Moreover, the cooperating individual advised where "*he* has a small pill press" (not someone else).  (ECF No. 21-1, ¶ 66, PageID #191 (emphasis added).)  He provided this information based on his first-hand knowledge.  "[A]dditional evidence substantiat[ed]" the information provided by the cooperating individual.  *May*, 399 F.3d at 824; *United States v. Jenkins*, 396 F.3d 751, 760 (6th Cir. 2005).  As a result,

from the perspective of the Magistrate Judge, the information from the cooperating individual was reliable and provided a fair probability that Mr. Crenshaw's house contained a pill press.

### II.C.  Trash Pull

Still, the cooperating individual provided the information about the pill press at Mr. Crenshaw's house in March 2022—some four months before the search. Arguably, this information became stale by the time investigators obtained the warrant.  Indeed, no information from the surveillance of Mr. Crenshaw or developed in the investigation of the drug trafficking organization tied him or his house to drug activity—until the trash pull a few days before the warrant issued.

As an initial matter, the trash pull did not require a warrant.  *See California v. Greenwood*, 486 U.S. 35, 40 (1988).   Under the law of this Circuit, "drug paraphernalia recovered from a trash pull establishes probable cause to search a home when combined with other evidence of the resident's involvement in drug crimes." *Abernathy*, 843 F.3d at 251–52 (citing *Marcilis v. Township of Redford*, 693 F.3d 589, 600–01 (6th Cir. 2012); *United States v. Martin*, 526 F.3d 926, 930, 937 (6th Cir. 2008); *United States v. Spikes*, 158 F.3d 913, 918–19 (6th Cir. 1998); and *United States v. Hill*, 142 F.3d 305, 307 (6th Cir. 1998)).  Here, the trash pull combines with evidence of the presence of a pill press at Mr. Crenshaw's house to establish probable cause—strictly, not evidence of "the resident's involvement in drug crimes," but still a fair probability that evidence of contraband would be found inside the house.

Trash-pull evidence "standing alone" was not sufficient to establish probable cause in *Abernathy*.  843 F.3d at 256.  There, the discovery of marijuana roaches and

19

plastic bags in the defendant's trash did not "create a fair probability that drugs would be found in Defendant's home." *Id.* at 251.  In this case, however, the trash-pull evidence does not stand alone.  The affidavit also describes the cooperating individual's tip that he kept a pill press at Mr. Crenshaw's residence.  Combined with this additional information, the evidence from the trash pull tips the total mix of information available to the Magistrate Judge about the probability of finding contraband at Mr. Crenshaw's house toward probable cause.

In this respect, this case more closely resembles *United States v. Baker*, 839 F. App'x 984, 989 (6th Cir. 2021), than *Abernathy*.  In *Baker*, trash-pull evidence confirmed an informant's tip, and the affidavit described surveillance of frequent visits to the home indicative of drug trafficking.  Although the information in the affidavit here, at least as it concerns Mr. Crenshaw, does not provide as strong a showing of probable cause as in *Baker*, the record shows that the trash pull corroborated the cooperating individual's statement, providing a fair probability that a search would find contraband in Mr. Crenshaw's residence.

Two last loose ends.  First, the baggie of suspected fentanyl without more would likely not support probable cause.  *Compare United States v. Lawrence*, 308 F.3d 623, 626–27 (6th Cir. 2002) (holding that "plastic bags containing wrappers with cocaine residue" *alone* "supplied sufficient probable cause for the search warrant"), *with Abernathy*, 843 F.3d at 256 (distinguishing *Lawrence* based on "the quantity of drug paraphernalia recovered from the defendant's garbage").  Nor does this case present a concern that investigators might have suspected fentanyl as a pretext for

20

the search.  The unidentified substance was found in packaging suggestive of narcotics following information that a pill press was at least stored, and presumably used, in the house.  Further, investigators sent the substance for testing.  In other circumstances, one might fairly question an opinion that an untested substance in fact constitutes contraband justifying a search.  Again, the question is close.  But the record contains sufficient circumstantial guarantees that rule out a pretextual identification, at least for purposes of probable cause.

Second, the trash pull saves the cooperating individual's information about the pill press from staleness.  While the cooperating individual supplied information to the authorities more than four months before the search (ECF No. 24-1, ¶¶ 65–66, PageID #238), the trash pull took place on Monday, July 25, 2022 (*id.*, ¶ 91, PageID #196).  Law enforcement secured the warrant later that week and executed it eight days after the trash pull.  (ECF No. 21, PageID #154.)  As the Sixth Circuit has pointed out, "the sale of drugs out of a residence . . . is not inherently ongoing." *United States v. Hython*, 443 F.3d 480, 485 (6th Cir. 2006).  Including outdated information may render the entire affidavit stale depending on the facts and circumstances.  *Id.* But the record in this case does not present such a case.  A pill press suggests a longer-term commitment to unlawful manufacturing of narcotics for sale, not occasional use or sale.  In any event, the trash pull refreshes the information about the pill press for purposes of a probable cause showing—at least under the governing standard of review.  *See, e.g.*, *Christian*, 893 F.3d at 859.  After four months elapsed, it would have been easy enough for investigators to reconfirm the information about the pill

press. But no intervening information suggests that the pill press moved or was no longer stored at Mr. Crenshaw's house. Accordingly, the warrant found support from "facts so closely related to the time of the issu[ance] of the warrant as to justify a finding of probable cause *at that time*." *Hython*, 443 F.3d at 485 (citation omitted).

## CONCLUSION

Because the affidavit supporting the warrant provided the Magistrate Judge probable cause to search Mr. Crenshaw's house, if barely, the Court has no occasion to consider application of the good-faith exception and **DENIES** Defendant's motion to suppress (ECF No. 21).

**SO ORDERED.**

Dated: September 5, 2023

_____
      J. Philip Calabrese
      United States District Judge
      Northern District of Ohio